UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

CIVIL ACTION NO. 13-113-WOB-CJS

DAVID L. FUGATEPLAINTIFF

v.**REPORT AND RECOMMENDATION**

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITYDEFENDANT

\* \* \* \* \* \* \* \* \*

Plaintiff David L. Fugate brings this action under 42 U.S.C. § 405(g) and § 1383(c)(3) challenging Defendant Commissioner's final decision regarding the calculation of the proper amount of benefits to which he is entitled and the requirement that he repay $8,875.00 that the Social Security Administration (SSA) claims it overpaid him. As explained below, the ALJ's decision on the benefit calculation was supported by substantial evidence, and the issue of waiver of the overpayment is not properly before the Court. It will therefore be **recommended** that Plaintiff's Motion for Summary Judgment (R. 15) be **denied** and the Commissioner's Motion for Summary Judgment (R. 20) be **granted**.

I.FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In June 1992, Plaintiff filed an application for disability insurance benefits, which was granted effective March 1992. (R. 103). The parties concede that because Plaintiff also receives workers' compensation benefits, the amount he receives from the SSA is subject to a workers' compensation offset, which permits reduction in disability benefits by the amount a claimant's total

benefits (including both worker's compensation and social security) exceeds 80% of his "average current earnings." *Id*.; *see also* 42 U.S.C. § 424a(2)-(6). In determining the amount of Plaintiff's average current earnings, the SSA used his highest year of wages, 1991, and calculated the offset using his December 15, 1991, pay stub. (R. 108). The December 15, 1991, pay stub provides that Plaintiff's year-to-date gross earnings were $22,964.41. (*Id*.). From his gross earnings, the SSA deducted the amount Plaintiff contributed pre-tax toward his flexible benefits and retirement plans. The Commissioner contends that these are non-covered earnings, which are not used to determine the average current earnings. Thus, after deducting the amounts Plaintiff paid pre-tax towards his flexible benefits and retirement plans, $122.85 and $1,148.26 respectively, SSA calculated Plaintiff's average current earnings as $21,693.30.

It appears from statements in the record that Plaintiff has been attempting to get the SSA to increase his benefits since his benefit was first calculated.[1] (R. 35). Reference is made to SSA letter in 2000 that explained Plaintiff's correct average current earnings were $21,693.30. (A.R. 55, 131). However, on March 29, 2004, the SSA notified Plaintiff that it had incorrectly calculated his average current earnings, and was increasing his benefits based upon his 1991 gross earnings of $22,964.41. (A.R. 125-26). On May 7, 2006, Plaintiff was again contacted by the SSA regarding the calculation of his average current earnings, but this time the SSA had determined that the original calculation of $21,693.30 was correct and that the 2004 calculation had been in error. (A.R. 131). The SSA

---

[1] The record demonstrates that Plaintiff's benefits were reviewed at least every three years for a determination of whether the national earnings level affected the amount of his benefit, which review generally did cause an increase in his benefits. (R. 124-130). These increases, however, do not appear to be related to the issue currently before the Court.

stated it had determined it had overpaid Plaintiff $8,875.00 and was seeking reimbursement of the overpayment.

The May 7, 2006, letter notifying Plaintiff of the overpayment explained that if Plaintiff disagreed with the SSA's determination regarding the overpayment, he had the right to appeal and request reconsideration, and the right to request a waiver of the overpayment. (A.R. 133). On May 18, 2006, Plaintiff requested reconsideration, arguing that he had not been overpaid because his three highest months of earnings in 1991 should be used to calculate his average current earnings for purposes of calculating the workers' compensation setoff, but Plaintiff did not request a waiver of the overpayment. (A.R. 70-74). The SSA reconsidered its position, but concluded that its calculation of his average current earnings was correct and that Plaintiff had been overpaid as set forth in its May 7, 2006, letter. (A.R. 75-76, 178-179). Specifically, the SSA explained that the gross earnings reflected in Plaintiff's December 15, 1991, check stub was required to be reduced by pre-tax contributions to Plaintiff's flexible benefits and retirement plans, as the SSA calculates benefits based on FICA earnings. (*Id*.).

On January 22, 2007, Plaintiff requested a hearing before an Administrative Law Judge (ALJ), arguing that the SSA had erred in its determination that his benefits had been incorrectly calculated and that he had received an overpayment. (*Id*. at 78). On March 26, 2008, ALJ Jimmy Coffman held a hearing on Plaintiff's appeal and issued a favorable decision. (A.R. 98-101). ALJ Coffman's May 5, 2008, decision, however, did not consider the proper calculation for determining Plaintiff's average current earnings at issue in the reconsideration, but instead determined that the overpayment of $8,875.00 was waived, finding Plaintiff was without fault in causing the overpayment and recovery of the overpayment would defeat the purpose of Title II of the Act. (*Id*.).

Plaintiff requested review of the ALJ's decision, seeking a determination that his benefits had not been properly calculated. (A.R. 92). The Appeals Council ultimately vacated the ALJ's decision, finding that the ALJ did not consider the issues addressed in the reconsidered determinations regarding the correct amount to be used to calculate Plaintiff's average current earnings and whether Plaintiff received an overpayment. (*Id*. at 103-05). Accordingly, the Appeals Council remanded the matter to provide Plaintiff with the opportunity for a new hearing and a decision on the issues raised. (*Id*. at 105).

On remand, Plaintiff's case was assigned to ALJ Ronald Kayser without explanation as to why it was not reassigned to ALJ Coffman, who issued the first decision. ALJ Kayser held a hearing on November 23, 2011, and issued a decision on January 9, 2012, finding Plaintiff's average current earnings in 1991 to have been correctly calculated at $21,693.30, and that the issue of the overpayment was not before him because there had not been a reconsideration or revised determination on the issue of the overpayment. (A.R. 12-16).

The Appeals Council denied Plaintiff's request for review, rendering the ALJ's January 9, 2012, decision the final decision of the Commissioner. (*Id.* 5-7). On April 24, 2013, having exhausted his administrative remedies, Plaintiff timely filed a Complaint asserting that the ALJ 's decision was erroneous. (R. 2). Plaintiff has filed a Motion for Summary Judgment raising the following issues: 1) any alleged overpayment should be waived;[2] 2) the matter should be remanded because Plaintiff did not have counsel after the first hearing and the SSA failed to properly develop

---

[2] While Plaintiff does not articulate his argument so succinctly, what Plaintiff presents in his Motion for Summary Judgment as issues 1, 2, and 4 seek a waiver of the overpayment arguing: ALJ Coffman's decision had found a waiver was appropriate; the transcript of the hearing before ALJ Coffman provided sufficient evidence that waiver of the over overpayment was warranted; and Plaintiff proceeded in good faith with his argument on benefit calculations. (R. 15).

4

the record; 3) the SSA erred in not obtaining a right to representation waiver prior to Plaintiff appealing ALJ Coffman's favorable decision; 4) the SSA erred in not reassigning the matter on remand to ALJ Coffman; and 5) the 2004 SSA determination recalculating benefits based on his 1991 gross wages was entitled to *res judicata* effect, which precludes the SSA from seeking overpayment now. In addition, Plaintiff asks "[w]hat is the correct formula for calculating S.S.D. Benefits?"

## II. ANALYSIS

### A. Standard of Review

In reviewing the Commissioner's final decision in social security cases, the only issues before the reviewing court are whether the Commissioner applied the correct legal standards and whether the factual findings are supported by substantial evidence. 42 U.S.C. § 405(g); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). The factual findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Blakley,* 581 F.3d at 406. Thus, even if the evidence could also support another conclusion, the decision of the ALJ must stand if the evidence could reasonably support the conclusion reached. *Id*. (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

In determining if the Commissioner's decision applied the correct legal standards, the Court will give deference to the Commissioner's interpretation of the law and will review his decision to determine its reasonableness and consistency with the statutes. *Whiteside v. Sec'y of Health & Human Servs*., 834 F.2d 1289, 1292 (6th Cir. 1987); *see also Merz v. Sec'y of Health & Human Serv*., 969 F.2d 201, 203-04 (6th Cir. 1992) ("In interpreting the meaning of a statute which is silent or ambiguous with respect to a specific issue, the agency charged with interpreting that statute is

accorded deference.*")*. In Social Security cases, the SSA's construction of the statute should be followed "unless there are compelling indications that it is wrong." *Merz*, 969 F.2d 203-04 (quoting *Whiteside*, 834 F.2d at 1292).

### B. This Court does not have Jurisdiction to Consider a Waiver of the Overpayment

Plaintiff argues that the overpayment should be waived because, as ALJ Coffman's May 5, 2008, decision found, Plaintiff had established the existence of the requirements for a waiver; i.e., Plaintiff is without fault and recovery would defeat the purpose of Title II. ALJ Coffman's decision, however, was vacated by the Appeals Council on Plaintiff's request for review, and the matter was remanded for a new decision.[3] *See Roberts v. Comm'r of Soc. Sec.*, No. 99-5650, 2000 WL 799332, at *6 (6th Cir. 2000) (ALJ decision not *res judicata* where vacated by Appeals Council); *see also* C.F.R. § 404.955 (ALJ decision not binding if Appeals Council revises decision). Upon remand, ALJ Kayser explained that under 20 C.F.R. § 404.930, a claimant can request a hearing before an ALJ if there has been a reconsideration or revised determination of a particular issue. ALJ Kayser found that in this case there had not been a reconsideration concerning the issue of a waiver of the overpayment, and therefore the issue of overpayment was not properly before him and he lacked authority to rule on the subject. (A.R. 15).

Similarly, federal courts have limited jurisdiction and decisions of the Commissioner may only be reviewed as provided by the Social Security Act. *Weinberger v. Salfi*, 422 U.S. 749, 757 (1975). The Social Security Act confers jurisdiction on federal district courts to review "any final

---

[3]The Appeals Council's review is not limited to issues raised by the parties to the decision below, as 20 C.F.R. § 404.970(a)(2) permits *sua sponte* review wherever there has been an "error of law." *Whiteside,* 834 F.2d at 1293 (citing *Mullen v. Bowen*, 800 F.2d 535, 543 (6th Cir. 1986) (en banc)).

6

decision of the Commissioner of Social Security made after a hearing to which he was a party." 42 U.S.C. § 405(g).

Administrative exhaustion for Social Security claims requires a claimant to complete four steps: initial determination, reconsideration, a hearing before an ALJ, and review by the Appeals Council. *Fryer v. Astrue*, No. 1:10-cv-62, 2011 WL 1483922, at *3 (S.D. Ohio Feb. 22, 2011), (citing 20 C.F.R. §§ 404.900(a)(1)-(4); 416.1400(a)(1)-(4)), *adopted* 2011 WL 1480129 (S.D. Ohio Apr. 19, 2011). A decision is not final until after the Appeals Council issues its decision on an issue or declines a request for review. *Id*. (citing *Willis v. Sullivan*, 931 F.2d 390, 397 (6th Cir. 1991) (footnotes and citations omitted)). "Decisions relating to waivers of overpayments are subject to the four-step administrative process to obtain judicial review." *Id*. (citing *Whiteside*, 834 F.2d at 1296).

Here, Plaintiff requested reconsideration of the SSA's determination that he had been overpaid. He did not file a request for waiver of that overpayment. Thus, ALJ Kayser was correct that the issue of waiver of the overpayment was not before him since Plaintiff did not file a request for a waiver and no initial determination had been rendered on the issue. Since the issue of waiver of overpayment was not adjudicated at the administrative level, the Commissioner has not made a final decision on the issue and this Court does not have jurisdiction to consider it.

"Only in certain special cases can exhaustion be excused, and this is only where the plaintiff raises a claim that is wholly collateral to his claim for benefits and makes a colorable showing that the claim could not be remedied by retroactive award of benefits." *See Quinn v. Comm'r of Soc. Sec.*, No. 08-11023, 2008 WL 4792012, at *2 (E.D. Mich. Oct. 28, 2008) (citing *Heckler v. Ringer*,

466 U.S. 602, 618 (1984)). Here, Plaintiff's claim for waiver of any overpayment can be remedied by payment for any overpayment already reimbursed.[4]

The Court notes for the benefit of the Plaintiff that it appears that he can still seek a waiver of the overpayment. The February 22, 2013, Notice of Appeals Council Action not only informed Plaintiff that the ALJ did not determine whether the overpayment should be waived because Plaintiff had not yet filed a waiver request, but specifically stated "[p]lease contact your local office in order to file a waiver request." (A.R. 8). Thus, Plaintiff may still be able to request a waiver of the overpayment. *See Fryer*, 2011 WL 1480129, at *2 (plaintiff did not exhaust administrative review for waiver of overpayment but could still obtain administrative relief by submitting proper paperwork); *Hannemann v. Barnhart*, No. 02 C 3736, 2003 WL 22303249, at *3 (N.D. Ill. Oct. 8, 2003) (summary judgment for Commissioner granted but plaintiff informed he may still request waiver of overpayment consistent with 42 U.S.C. § 404 and 20 C.F.R. § 404.501 *et seq.*).

Accordingly, the Court will recommend that the presiding District Judge deny the request for waiver of any overpayment asserted in issues 1, 2, and 4, for lack of jurisdiction. *See Fryer*, 2011 WL 1483922, at **2-3 (court lacked federal jurisdiction over waiver of overpayment claim because plaintiff failed to exhaust administrative remedies); *Soto v. Asture*, No. 09-Civ-9862, 2011 WL 1097392, at *3 (S.D.N.Y. Mar. 23, 2011) (same); *Quinn*, 2008 WL 4792012, at *1 (no subject matter jurisdiction since SSA had not yet adjudicated waiver issue because plaintiff did not file request for waiver of overpayment).

---

[4]It appears from the transcript of the November 23, 2011, hearing that Plaintiff has not reimbursed the overpayment, after the initial reimbursement was returned to him upon ALJ Coffman's decision that the overpayment was waived. (A.R. at 229).

## C. SSA did nor Err in its Development of the Record or in Advising Plaintiff of his Right to Counsel

Plaintiff argues that "benefits should be granted"[5] because Plaintiff was without representation after the March 26, 2008, hearing and the SSA failed to properly develop the case for him. In support of this argument, Plaintiff cites to a Ninth Circuit case that explains when a claimant is not represented by counsel an ALJ has a duty to "conscientiously probe into, inquire of, and explore for all the relevant facts." *Higbee v. Sullivan*, 975 F.2d 558, 561 (9th Cir. 1992).

While an ALJ has a basic obligation to develop a full and fair record when a claimant is unrepresented, each case is to be reviewed on its own merits to determine whether the ALJ failed to develop the hearing such that the claimant was denied a full and fair hearing. *Kidd v. Comm'r of Soc. Sec.*, 283 F. App'x 336, 344-45 (6th Cir. 2008); *Duncan v. Sec'y of Health & Human Serv.*, 801 F.2d 847, 856 (6th Cir. 1986).

Here, Plaintiff does not articulate what facts were not fairly developed at the administrative level. This is not a case where disability is disputed and complicated medical evidence is being discussed. Instead, the issue is the calculation of benefits, and Plaintiff does not assert that the ALJ failed to obtain the necessary documents or information required to calculate Plaintiff's benefits. To the contrary, the record contains Plaintiff's 1991 payroll records, which Plaintiff also relied on in arguing his position to ALJ Kayser. (R. 180-81). Plaintiff has not established that he was denied a fair hearing or that any relevant facts were left uncovered, and the Court finds no error.

---

[5] Plaintiff is receiving benefits and his disability status is not at issue in this case. It is not clear whether by this statement Plaintiff is seeking a waiver of the SSA's finding of an overpayment or that he is entitled to additional benefits. Nevertheless, this determination is not critical for adjudication of this issue.

Plaintiff also argues that the SSA erred in not having him sign a waiver of right to representation form at the time he appealed ALJ Coffman's favorable decision. Plaintiff fails to provide any argument or authority supporting his assertion that the SSA was required to obtain a waiver of representation at this stage of the administrative process.

While a claimant is permitted to have counsel represent him at his administrative hearing and on appeal if desired, *see* 42 U.S.C.A. § 406; 20 C.F.R. § 404.1700 *et seq.*, legal representation is not required. *See Granger v. Finch*, 425 F.2d 206, 208 (7th Cir. 1970). Here, prior to both administrative hearings, Plaintiff signed a "Right to Representation" form, acknowledging his understanding that he has a right to be represented by an attorney and that it was his decision to proceed with the hearing without a representative. (A.R. 90, 184). Thus, both ALJs complied with the SSA's policy regarding notification to a claimant of his right to be represented.

Further, while Plaintiff fails to identify any requirement that the SSA again notify a claimant of his right to counsel prior to his filing an appeal of an ALJ's decision, the letter enclosing each of the ALJ's decisions here did inform Plaintiff that he had a right to be represented on appeal. (A.R. 10, 96-97) (containing heading "Your Right To Representation In An Appeal"). Further, ALJ Coffman's favorable decision was accompanied by a letter that explained that if Plaintiff appealed his favorable decision, the Appeals Council "will consider all of [the] decision, even the parts with which you agree." (A.R. 96).

Moreover, Plaintiff is an educated man, having obtained a masters degree, and does not claim to suffer from any psychological impairment that would affect his ability to read and comprehend. (A.R. 242-43). In addition, Plaintiff had previously retained counsel in this matter and when counsel withdrew from the case, he decided to proceed pro se. (A.R. 90, 239-40). Plaintiff was informed

of his right to counsel at both the hearing level and after the ALJs issued their respective decisions. Accordingly, Plaintiff has not established that the SSA acted improperly in advising him of his right to representation or that Plaintiff was otherwise unaware that he could retain counsel, if he so desired, to assist him at any stage of his administrative proceeding.

### D. SSA was not Required on Remand to Reassign Matter to First ALJ

Plaintiff argues that the SSA erred in not reassigning the matter on remand to ALJ Coffman, who issued the May 5, 2008, decision that was vacated by the Appeals Council. (R. 14-2, at 14). Plaintiff does not, however, expand on this position by offering any legal argument or citations. Nor does Plaintiff explain why it was improper for ALJ Kayser to hear the remanded matter.

The Commissioner has provided a citation to the SSA's Hearings, Appeals, and Litigation Law Manual (HALLEX), which explains that while the SSA will generally assign a court-remanded matter to the original ALJ, the case can be reassigned when a previous ALJ is unavailable or has an excessive workload. *See* HALLEX § I-2-8-18;[6] *see also Travis v. Sullivan*, 985 F.2d 919, 924-25 (7th Cir. 1993) ("[t]o whom a case should be remanded is generally within the province of the Secretary's responsibility"). There is no perceived argument as to why this procedure would not also apply when a case is remanded by the Appeals Council.

Further, Plaintiff has not established that he was prejudiced by ALJ Kayser presiding over his hearing on remand. While ALJ Kayser's decision was not the outcome Plaintiff sought, he has not shown ALJ Kayser was biased or otherwise unfit to preside over the matter. The SSA's decision to assign this matter to ALJ Kayser was not error.

---

[6]Section § I-2-8-18 of the SSA's Hearings, Appeals, and Litigation Law Manual can be found at http://www.socialsecurity.gov/OP_Home/hallex/I-02/I-2-8-18.html.

**E. The SSA's 2004 Adjustment to his Average Current Earnings Does Not Preclude further review by the SSA**

Plaintiff argues that the March 29, 2004, letter of SSA informing him that his benefits had been recalculated based on his gross wages for 1991 is entitled to *res judicata* effect, preventing the SSA from claiming overpayment and/or demanding he refund the overpayment. Again, Plaintiff does not attempt to develop this argument with any legal authority or specific reasons for his argument.

The regulations outline when a determination can be reopened by the SSA. 20 C.F.R. §§ 404.988(b)-404.989. Specifically, a determination, revised determination, decision, or revised decision may be reopened within 12 months of the date of the notice of the initial determination[7] for any reason and within 4 years of the date of the notice of the initial determination if there is good cause to reopen the case, as defined in 20 C.F.R. § 404.989. *See* 20 C.F.R. § 404. 988. Good cause is found if new and material evidence is furnished, a clerical error in the computation or recomputation of benefits is made, or the evidence that was considered in making the determination or decision clearly shows on its face that an error was made. 20 C.F.R. § 404.989.

The SSA's Program Operations Manual System (POMS) explains when matters involving workers' compensation benefits can be reopened. *See* POMS 04030.080.[8] With respect to an error in calculating a claimant's average current earnings, which is what is at issue here, POMS 04030.080(7) explains when the SSA can remedy the error as follows:

---

[7]An initial determination is a determination that is subject to administrative and judicial review and, among other topics, includes determinations about a recalculation of benefits and a finding of an overpayment. *See* POMS 03101.070, https://secure.ssa.gov/apps10/poms.nsf/lnx/0203101070.

[8]POMS 04030.080 can be found at https://secure.ssa.gov/apps10/poms.nsf/lnx/0204030080.

12

> When we compute offset we make an error (e.g., compute [average current earnings] . . . incorrectly) which results in the incorrect benefit amount being paid after offset.
>
>> •If we discover the error within 4 years we can correct the amount payable after offset.
>>
>> •After 4 years we can correct the amount payable after offset only if it would be favorable to the claimant.
>>
>> •However, even after 4 years, if there is a change in the amount of WC that occurred after the initial determination, when we recompute offset using the new amount, we can compute offset correctly (e.g., use the correct ACE, TFB, or excludable expenses) effective with the date of the change.

POMS 04030.080(7).

Here, because the 2004 determination that Plaintiff's benefits had been incorrectly calculated was favorable to him, the SSA was permitted to correct the error. *Id*. This constituted a new initial determination since it was a recalculation of the benefit amount. *See* POMS 04101.070(B).[9] Similarly, since the May 7, 2006, letter notifying Plaintiff that his average current earnings had been improperly recalculated was within four years of the 2004 initial determination, SSA was permitted to reopen the matter to correct the average current wage so it could correctly calculate the workers' compensation setoff. *Id*. Accordingly, the SSA's decision to reopen the matter to recalculate the workers' compensation setoff was not in error.

### F. Proper Calculation of Benefits

In his Motion for Summary Judgment, Plaintiff presents his last issue as a question, asking "[w]hat is the correct formula for calculating S.S.D.?" and he attaches an article written by employees of the American Association of Retired People (AARP) Public Policy Institute, which explains the formula for calculating a worker's primary insurance amount. (R. 15-1). He offers no

---

[9]POMS 04101.070(B) can be found at https://secure.ssa.gov/apps10/poms.nsf/lnx/0203101070.

legal analysis of the proper method to use nor did he explain why the SSA's calculation and explanation were in error.

The Social Security Act provides that if a plaintiff also receives workers' compensation benefits, the amount he receives from the SSA is subject to a workers' compensation offset. 42 U.S.C. § 424a. Pursuant to 42 U.S.C. § 424a(a)(5), the SSA will reduce the amount of disability benefits by the amount his total benefits exceed 80% of his "average current earnings." The statute and regulations provide three methods for calculating a plaintiff's average current earnings: (A) the average monthly wage used for purposes of computing a persons disability insurance benefits; (B) one-sixtieth of the total of his wages for the five consecutive calendar years for which such wages were highest, or (C) one-twelfth of the total of his wages for the calendar year in which he had the highest income during the period consisting of the calendar year in which he became disabled and the five years preceding that year. 42 U.S.C. § 424a(a); 20 C.F.R. § 404.408(c)(3)(A)-(C); POMS DI 52150.010.[10] The statute and regulations provide that the SSA should use the method that produces the highest income level for the claimant to determine the claimant's average current earnings. *Id.* The Social Security Program Operations Manual System explains that the SSA will use the claimant's covered earnings in computing all three methods. Covered earnings are "earnings on which workers pay Social Security and Medicare taxes." POMS RM 01310.010(C)[11]; Social Security Handbook, § 504.3.[12]

---

[10]POMS DI 52150.010 is found at https://secure.ssa.gov/poms.nsf/lnx/0452150010.

[11]POMS RM 01310.010 is found at  https://secure.ssa.gov/apps10/poms.nsf/lnx/0101310010.

[12]Section 504.3 of the Social Security Handbook can be found at http://www.ssa.gov/OP_Home/handbook/handbook.05/handbook-0504.html.

Here, the SSA determined that the method that produced the highest income level for Plaintiff was the third method, and it used Plaintiff's 1991 wages because it was Plaintiff's highest income year in the relevant six-year period.[13] (A.R, 104). Plaintiff's last pay stub from 1991 evidenced that his gross income was $22,964.41. For purposes of calculating average current earnings in determining a workers' compensation setoff, the SSA looks only to covered earnings; i.e., those wages on which the claimant paid Federal Insurance Contribution Act taxes. Accordingly, the SSA did not include wages that Plaintiff used to make pre-tax contributions to his flexible benefit or retirement plan. *See* POMS RM 01310.010(C); Social Security Handbook, § 504.3. Thus, while Plaintiff's gross earnings were $22,964.41, his FICA earnings were $21,693.30, because Plaintiff made pre-tax contributions to his flexible spending and retirement accounts in the amounts of $122.85 and $1,148.26 respectively. (A.R. 85, 108). Therefore, the SSA calculated the workers' compensation setoff for Plaintiff using $21,693.30 for his average current earnings.

Plaintiff argues that the SSA should have calculated his average current earnings using his three highest months of earnings in 1991. (R. 15, at 9-10; A.R. 72-73, 180-81; 220-222). Plaintiff does not direct the Court to any authority to support his argument that this proposed method of calculation is the correct method for calculating the average current earnings for purposes of calculating the workers' compensation setoff. Moreover, Plaintiff's proposed method is not supported by the statute or regulations which sets forth the three methods stated above. *See* 42 U.S.C. § 424a(a); 20 C.F.R. § 404.408(c)(3)(A)-(C).

The Commissioner's method of calculating Plaintiff's average current earnings for purposes of determining the workers' compensation setoff is a reasonable interpretation of the law and is

---

[13]Plaintiff seems to concede that 1991 was his highest year of income.

consistent with the statute. In addition, the actual calculation of Plaintiff's average current earnings is a factual finding that is supported by substantial evidence of record.

## III. CONCLUSION AND RECOMMENDATION

As explained above, the ALJ's Decision is based on a reasonable interpretation of the statute and the Decision's calculations are supported by substantial evidence; thus, it should be affirmed.

Therefore, **IT IS RECOMMENDED** that:

1. the Commissioner's decision be found to be supported by substantial evidence and therefore **affirmed;**

2. Plaintiff's Motion for Summary Judgment (R. 15) be **denied;**

3. Defendant's Motion for Summary Judgment (R. 20) be **granted;** and,

4. this matter be **stricken** from the active docket of the Court.

Specific objections to this Report and Recommendation must be filed within **fourteen (14)** days of the date of service or further appeal is waived. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 728 F.2d 813, 815 (6th Cir. 1984), *aff'd*, 474 U.S. 140 (1985). A party may file a response to another party's objections within **fourteen (14)** days after being served with a copy thereof. *See* Fed. R. Civ. P. 72(b).

Dated this 6th day of January, 2014.



Signed By:
*Candace J. Smith*
United States Magistrate Judge

G:\DATA\social security\13-113 Fugate R&R.wpd